IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIE CURRY, )<br>)<br>Defendant. )<br>)  | 4:10CR3123<br><br>MEMORANDUM<br>AND ORDER |

Willie Curry (Curry) has filed a timely Motion under 28 U.S.C. § 2255 (filing no. 73) attacking his lawyer and seeking to vacate his conviction and sentence. After initial review, the motion will be denied with prejudice.[1] It plainly appears from the motion and the record of the prior proceedings that Curry is not entitled to relief.

## I. BACKGROUND

Curry, who resided in Chicago, retained Frank J. Himel, a lawyer from Chicago, to represent him. Curry had been charged with possessing more than 500 grams of powder cocaine with the intent to distribute. Mr. Himel challenged the traffic stop and subsequent search of the vehicle Curry was driving. Judge Zwart conducted an evidentiary hearing and concluded that (1) the traffic stop was lawful because Curry

---

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides in part:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. . . .

was following a semi-truck too closely and a police dispatcher told the officer that the vehicle's plates were not associated with a registered vehicle; (2) once having stopped the vehicle, officers had reason to be suspicious of Curry, for among other reasons, because he failed to provide them with a valid vehicle registration, his carotid artery was pulsing when he conversed with the officers and his story about his travels was odd; (3) despite the officers' suspicions, Curry received only a warning ticket and was free to go; (4) after he was free to go, Curry voluntarily consented to a search of his vehicle for drugs and guns and things like that and thereafter the officers found roughly two kilos of powder cocaine in a hidden compartment in the dash. (Filing no. 40 at CM/ECF pp. 90-94; filing no. 41.) Alternatively, Judge Zwart found that even if the traffic stop was unlawful, the government proved that the consent to search was voluntary and was not tainted by the allegedly illegal stop. (Filing no. 40 at CM/ECF pp. 93-94.) Mr. Himel objected to Judge Zwart's findings and recommendations. (Filing no. 42.) Despite that objection, I agreed with Judge Zwart and denied the motion to suppress. (Filing no. 43.)

After I denied the motion to suppress, Curry entered into a non-cooperation plea agreement with the government. (Filing no. 49.) The government agreed not to file an information alleging a prior drug felony that would have substantially increased the statutory minimum penalty applicable to Curry. (*Id.* at CM/ECF p. 1.) Curry waived his right to appeal and waived his right to file a § 2255 motion with the exception that he was permitted to seek post-conviction relief based upon ineffective assistance of counsel.[2] (*Id.* at CM/ECF pp. 6-7.) Curry executed a petition to enter a plea of guilty (filing no. 48) and then tendered a fully informed plea of guilty which was accepted. (Filing no. 50; filing no. 53; filing no. 54.)

Curry received a sentence of 60 months in prison. (Filing no. 63.) Despite his extensive criminal history (filing no. 61 at CM/ECF pp. 9-12 and ¶¶ 37-54), Curry's sentence was the statutory minimum I could impose. (Filing no. 62.) No appeal was taken.

---

[2]There were other exceptions but they are not pertinent.

Curry later submitted an unsworn letter to me which I construed as a grievance under our attorney discipline rules. (Filing no. 70.) In general, Curry complained that Mr. Himel had divulged confidential information about Curry to gang members and others. I ordered Mr. Himel to respond to the grievance and he did so. (Filing no. 71.) In his affidavit, and among other things, Mr. Himel swore that the only conversations he had with anyone other than Curry took place with Curry's girlfriends after Curry had explicitly consented to the discussions. (*Id.*) He explicitly denied revealing information to gang members. (*Id.*)

The grievance was denied. I stated: "When viewed in contrast with the unsworn statements of Mr. Curry, Mr. Himel's sworn response convinces me that there is no basis for disciplinary sanctions. Specifically, Mr. Himel did not reveal privileged communications and any discussions that Mr. Himel had with third parties were authorized by Mr. Curry." (Filing no. 72.) The next day, Curry filed his § 2255 motion.

## II. ANALYSIS

The defendant argues that his counsel was ineffective. Therefore, the *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment). In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must establish two things. He or she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[3] and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[3] A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 690.

would have been different.'"[4] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688 & 694.)

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

### *Ground One*

For his first ground of relief, Curry asserts that his lawyer was ineffective for not arguing that the stop of the vehicle that led to Curry's arrest was pretextual and racially motivated. This argument is based upon the assertion in Curry's motion that another driver was not stopped for following too closely and Curry "presum[es]"that the other driver was Caucasian. (Filing no. 73 at CM/ECF p. 4.)

There are a number of responses to Curry's assertions. I will briefly describe three separate points that establish that Himel was not ineffective or that there was no prejudice even if one assume that Himel's representation fell below the applicable standard.

---

[4] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but it is more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir.2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

First, Curry's claim is predicated upon the assumption that a white person was treated differently than Curry, a black man. Curry's assumption is plainly insufficient.[5] Moreover, Himel explicitly argued that the stop was "arbitrary" (e.g., filing no. 42) thus essentially raising the argument that Curry suggests he should have raised. Finally, after carefully applying the law from our Court of Appeals, Judge Zwart found, and I agreed, that even if the stop was unlawful, the consent to search the vehicle was sufficiently attenuated from the stop that the drugs derived from the search were admissible. *See*, *e.g.*, *United States v. Barnum*, 564 F.3d 964, 972-973 (8th Cir. 2009) (circumstances surrounding traffic stop and subsequent consented searches of driver's person and of vehicle supported finding that consent purged taint arising from alleged lack of probable cause for stop, as required for admissibility of evidence found in searches; 12 to 15 minutes passed between stop and giving of consent, events intervened, i.e. officer's returning license to driver and declaring that stop had concluded, and, even assuming objective unreasonableness of stop, which was based on malfunctioning taillight, there was no indication of blatant Fourth Amendment violation as opposed to mistake of fact). As a consequence, because the drugs would have come in anyway, Curry was not prejudiced by Himel's alleged failure to raise the argument that the stop was racially motivated. Thus, for a variety of independent reasons, ground one lacks merit.

## *Ground Two*

Curry argues that Mr. Himel was ineffective for failing to argue that Curry was questioned without being given his *Miranda* warnings. This argument may be quickly rejected. Mr. Himel *did* challenge statements that Curry made as fruits of the search, but he deferred that challenge until he knew whether or not the stop and

---

[5] Curry also asserts in a separate filing that one of the Troopers asked Curry something like: "What is a black man doing this far out in Nebraska[?]" (Filing no. 75.) A DVD of the traffic stop was presented to Judge Zwart. (Filing no. 35, Ex. 1.) Curry fails to direct me to any portion of the DVD that supports his assertion and my brief review of the DVD fails to reveal any such statement.

subsequent search of the vehicle would be held to be unlawful. (Filing no. 40 at CM/ECF p. 3.) Once the search was held to be lawful, and the drugs were deemed admissible, Curry's decision to enter a guilty plea–thus avoiding the filing of an information that would have raised the statutory minimum penalty–based upon government evidence that Curry possessed two kilos of cocaine, arguably mooted the necessity of challenging any statements that Curry may have made. In sum, Mr. Himel made a tactical and practical decision that was reasonable, and Curry was not prejudiced by that decision.

### *Ground Three*

Curry argues that Mr. Himel was ineffective because he failed to argue that Curry's consent to search "did not extend to invasions of the dash area." (Filing no. 73 at CM/ECF p. 7.) Curry gave broad-based consent to search for drugs. When the officer entered the vehicle it was apparent to him that the dash had been tampered with and a secret compartment installed. (E.g., filing no. 40 at CM/ECF pp. 79-80 (among other things, noting presence of screw drivers in plain view, absence of screws where there should have been screws, and carpet inside dash where there should not have been carpet).) A police offer "may reasonably interpret a suspect's unqualified consent to search a vehicle for drugs to include consent to, inter alia, . . . open compartments that appear to be false . . . or puncture such compartments in a minimally intrusive manner." *United States v. Ferrer-Montoya*, 483 F.3d 565, 568 (8th Cir.2007). Bluntly put, Himel did not violate the applicable standard of care by failing to raise a silly argument.

### *Ground Four*

Curry accuses Mr. Himel of violating his Sixth Amendment rights by showing "gangbangers" and others incriminating statements that Curry had made. (Filing no. 73 at CM/ECF p. 8.) This is the same claim that I previously considered and rejected based upon the detailed and sworn affidavit of Mr. Himel as contrasted with the earlier unsworn grievance of Curry. (Filing no. 71; filing no. 72.) Curry is not entitled to

two bites of the apple. Moreover, even if Himel did what Curry claims, Himel's actions did not prejudice Curry insofar as his conviction or sentence is concerned.[6]

### *Ground Five*

Curry asserts that Mr. Himel was ineffective for failing to tell Curry that an appeal could be taken regarding denial of the suppression motion. The short answer to Curry's argument is that he waived his right to appeal and that waiver was knowing, intelligent and voluntary. (Filing no. 49 at CM/ECF pp. 6-7 (plea agreement); filing no. 53 at CM/ECF pp. 53-54 (Rule 11 colloquy).)

### III. CONCLUSION

Curry was obviously guilty, and Mr. Himel skillfully negotiated around the shoals inherent in cases like these to obtain the least onerous sentence that could have been obtained under the circumstances. Instead of complaining, Curry ought to be thankful.

IT IS ORDERED that:

1. The motion to proceed in forma pauperis (filing no. 76) is granted.

2. The Clerk will take possession of Ex. 1 (the DVD) to the suppression motion which had been returned to the United States Attorney and which was delivered to me for the initial review of the pending motion. That exhibit is herewith delivered to the Clerk.

---

[6]Realizing this point, Curry seeks damages against Himel. (Filing no. 73 at CM/ECF p. 14.) However, a § 2255 motion is not the proper way to make such a claim.

3. The motion to vacate under 28 U.S.C. § 2255 (filing no. 73) is denied with prejudice.

4. A separate judgment will be issued.

DATED this 29th day of February, 2012.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.